And at this time, we'll hear Silipigno v. United States. Thank you. Good morning. Good morning, Your Honor. May it please the court. My name is William Dreyer and I'm here on behalf of Mr. Silipino, the appellant. This is an appeal from a tax refund case and the district court in its decision ruled against Mr. Silipino holding that a 2009 application for a refund using a net operating loss carried back to 2004 was improperly filed using a form 145 rather than a form 1040X and therefore declared that that was jurisdictionally defective. In the second cause of action, he ruled that with respect to the 2005 return, where Mr. Silipino had claimed a refund based on a 2007 return with a net operating loss carry back to 2005, that there was evidence showing that an offset would exceed the amount of the refund being claimed and therefore he granted summary judgment to the government in that case. What's wrong with, in a situation in which the taxpayer says, please recompute my 2005 tax liability because I want to the government to look at the whole thing and decide. Nothing. Yeah. I agree with that. Yeah. In other words, the 2005 return then becomes, it's all reopened, not for assessment purposes, but to establish if an offset, if it's beyond the statute, if an offset is appropriate. And that's what was done here. Well, if an offset is appropriate and whether an offset is appropriate may depend upon whether there are other features of that filing that need to be looked at again. I agree. Except what I will argue in a few moments is that the district court used evidence, which we would submit to the court, was not appropriate for summary judgment and which should have warranted a decision either in favor of Mr. Silipino or a ruling that the case, at least on 2005, should go to trial. Yes. So turning though to 2009 and we'll get to 2005, the operative fact that we think, and by the way, the case law is fairly clear. The judge, the district court accurately stated all the principles of jurisdiction, the jurisdictional defect, the inappropriateness of using a form 145. But in 2009, in June of 2009, the FBI searched, executed a search warrant at the company at which Mr. Silipino was charged, a criminal investigation into the activities of the mortgage company. It was a company that was employing government programs and one particular program the FBI was looking at was whether or not applicants who were using unverified income statements for their applications were being encouraged by FGM to somehow doctor their income. So that was the gist of it. There were no tax allegations. There were no statements at the time that tax returns were going to be investigated. This was an FBI investigation. They had an IRS agent on the case with them to trace funds and money. In October of 2010, Mr. Silipino filed the two applications that I'm referring to. He filed his 2009 return with a form 145, which petitioned for a refund, a tentative refund. And then he filed appropriately a 1040X for his 2007 return, which carried back to 2005. What the agent did when she received those is to put them on hold. Now, from the 2000, from the application date of October 2010, it was a three year statute. At the end of the three years, Mr. Silipino would have been out of luck for not perfecting his appeal, for doing it incorrectly, for using the wrong form. The agent- You're referring to the 2004. 2004, because the application was made in October of 2010. The expiration of the three year statute would have been in 2013, and that applied to both 2004 and 5. The agent put them in a hold status for no reason other than there was a criminal case pending. Why isn't that a pretty good reason? It would be a good reason if it involved a collateral tax investigation into returns, so that the parallel civil investigation wouldn't interfere with the criminal case. Never knows where criminal investigations go. I concede that. So let's assume it is a good reason. There was no contact with the taxpayer. No notice that is being held, no application to the district court trying to get a freeze of the accounts. No 90 day response under 6411 of the code. No statement that we're disallowing your 2009 claim to carry back to 2004. So concededly, taxpayers do have obligations, and in this case, Mr. Silipino and his tax representative, who is now deceased, made frequent phone calls to the IRS. And the response was, it's being held. After the completion of the criminal case, it will be released. So there was no identification of the defect. There was no identification of the issue that was going to later affect 2005. And so Mr. Silipino passed right on through 2013 without knowing that the IRS had prevented him and his accountant from making any changes or from addressing any issues that ordinarily a revenue agent would have spotted. You're referring to the adjustments in the 2005? Correct, correct. So turning to what happened in this case, in 2014 the government said, we're declining to prosecute Mr. Silipino and the managers of FGM and FGM. And Mr. Silipino then went back and said, okay, send me my refund, which you said you were holding until the completion of the criminal case. And of course, in the fall of 2014- They said they were holding the refund or they were holding the case? Well, that's an important question because all I can say, and we have it in the record, is that he was being told that the refund was being held. Which he construed as, and for reasons that I'll explain, he construed as his claim was processed. There was a refund issued and it was being held as what he thought a restitution hold. Suppose he was not misled in that way, what difference would it have made? Well, I don't think if he was not misled, in other words, if he was told that the hold hasn't even been processed, that's what the court's referring to. If he was told, we're holding the case, we haven't processed it yet, then he would have had an opportunity to revisit whatever it is that he and his accountant- But didn't he already revisit it? Because in 2007, he filed a 1040X in respect of 05. And in 2009, he filed an application for temporary refund in respect of 04. He did. So the court's question, I think, is a valid one. In other words, was the file complete when he filed it? And in other words, if in 2014, one year after the statute of limitations, he said, where's my money? And they said, well, your statute's gone, and by the way, we did process your claim. But your papers were incomplete, or you used the wrong form. That flies in the face of what we say 6411 is all about, when an application for a tentative refund is filed. The IRS has 90 days to respond to it if it's duly filed. Duly filed. Duly filed. Yeah, but it pertains particularly to that form, 6411. So 6411 says the IRS has 90 days to respond if it is practicable to do so. That's the language that the district court seized upon to say, well, the commissioner didn't have to, and therefore it's not, your estoppel argument is not valid because- Because the burden's on the taxpayer to decide whether it's impracticable. Well, that's what the government's position is. And you find that odd. I do. I think when you hold a case, then the burden should shift to the government. If there's no hold here, there's no case. The judge below is correct. Yeah, I'm inclined to agree with you that if you have to prove what's impracticable for the IRS, you're just not going to do it. You're not going to be able to. I agree, Your Honor. And so that's why the hold is the operative fact here. The hold is what caused the statute of limitations to expire, which necessitated this lawsuit, because in the fall of 2014, after the criminal case went away, Mr. Cilipino had no recourse. Your form is no good, and you had an offset in 2005, which exceeded the amount of your application for a refund. Now, I would just like to turn that to that for a moment. Were you able to challenge that in tax court, the ruling that there was an adjustment with respect to what was filed in 2005, that completely offset the claim, the net operating loss? It was challenged in this way. It was challenged in this way. Yeah. So you did have the opportunity to challenge it. We did. But it was challenged in this way. It was a summary judgment motion in district court, not the tax court. And we have a statement of disputed facts. And in the statement of disputed facts, page 2223 of the appendix, we disputed the fact that there was a so-called $4,500,000 deduction, which both Mr. Cilipino and FGM supposedly took together. If they had taken it together, that was improper, and the revenue agent was saying that means that because it was improper, there was an extra tax that could have been due and there was an offset. But you had no evidence to support that $2.5 million claim. I mean, that's the ruling. Well, I think the rule- You can put it down, and if you don't get audited, then you can skate by, and it may even be valid. But if somebody looks at it, and you don't have any support for it, it's pretty hard to complain if they reject it. That's the second prong of our argument. I know I'm running out of time. It's okay, go ahead. So the second prong of our argument is that something else happened in this case, which added on to the fact that the government held the return without notice to anybody. The second thing is that in June of 2011, the same IRS agent who was involved in the investigation went to Mr. Cilipino's accountant's office, served a subpoena, and that very day took every document out of his office which pertained to Mr. Cilipino as a client. And that was corroborated by Mr. DeLong, who was present during that operation and assisted the accountant in giving the IRS the documents that pertain to Mr. Cilipino. So even if after the expiration of the statute of limitations, Mr. Cilipino wanted to somehow contest what the IRS was doing in saying I have all this support, he had no documents left. They were in the possession of the IRS, and when they were returned, they were returned in such a fashion. There were 500 boxes of records that were given back to him from the seizure of the FGM records. And the accountant records were disorganized. The computer that had been taken from Mr. Cilipino, which had some of these records on it, was disabled. So there were a lot of reasons why I'm suggesting that there are answers to each of these findings that the court made. And the important one in 2005 is that when the revenue agent interviewed, this adds another fact, but when the revenue agent interviewed Mr. Gillooly, the accountant for Mr. Cilipino because she had picked out the 2005 return for a routine audit in 2008. They had a conversation about this allegation that there was a double deduction taken. And she claims that Mr. Gillooly agreed with her. Well, that's, I don't want to characterize the agent, but if that were true, then she would have issued a jeopardy assessment for a whopping tax against Mr. Cilipino because the assessment period was still open. That was never heard of again until 2014 and 15 when Mr. Cilipino came along and said, I'm entitled to my refund for 2005. And we contest that allegation and we'll show it by way of our cost sharing agreement. So that's the case in a nutshell, Your Honor. I'll be happy to ask any questions, answer any questions that I can. Thank you. Thank you. We'll hear the Internal Revenue Service. Thank you, Your Honors, and may it please the court, Julia Vetta for the United States. What we have here is a taxpayer who is asking for, effectively, something for nothing. He wants a refund. I'm sorry to do this. Beg your pardon. I'm trying to understand which federal government employees are arguing and which are forbidden. I just don't understand what the, I'm delighted to see you. It's very helpful, but did you try maybe to put it off? I'm trying to figure out how it works. Your Honor, I am. We have a lot of appeals in which the government is asking us to adjourn. Which is very inconvenient, but if lawyers can come anyway, it seems pointless for us to. I'm just trying to figure out how it works. We are not funded, Your Honor. We are not permitted to request adjournments of pre-existing oral arguments. We travel, at present, at our own expense to comply with the directives of the court, which were provided to us prior to the lapse in appropriations. We do not know when that lapse will end. We are obligated to continue our jobs to the extent necessary to protect property, including the public fisc. And we do so on our own esteem. Thank you. Thank you. Let's restart the time. Thank you. We've now established that you're here without violating the anti-deficiency. I am accepted from furlough for the purposes of this argument. Yes. We have two tax years at issues here, 2004, 2005. And the district court correctly held that there is no basis to issue a refund to this taxpayer in either year. In 2005, that's because there's no overpayment to refund. In 2004, it's because there's no jurisdiction over the refund claim, because no form 1040X, no amended claim seeking a refund for that year was ever filed. What was filed, and I'll speak to that year first. What was filed was actually a form 1045, which is a tentative request for a carryback adjustment. Section 6411A of the Internal Revenue Code and the Enabling Treasury Regulation both make absolutely expressly clear that that is not and cannot be a claim for refund, that particular form on which taxpayer seeks to rely. What purpose does it serve? There is a tax court case discussed in the briefing that explains how in straighter times it provided for some liquidity if the IRS could expedite refunds that would then later be sought. To just put money back into tax payers hands basically in the depression or times when they needed liquidity, needed cash on hand. But the statute also makes clear that that presumed 90 day period of action, the hustle, the hurry to get that money back to the taxpayer is only, the statute reads precisely, the secretary shall make to the extent he deems practical in said period. That's the secretary, that's not the taxpayer who's making the determination of practicability. This doesn't seem to impose very much of a burden on the IRS and you can do it if you think it's okay, if you want to do it. No one is suggesting that processing this request was burdensome to the IRS. What the IRS was doing was hands off while law enforcement was touching these exact entities, first guarantee mortgage, Saratoga Venture Capital, drug risk solutions. These are companies that are adjacent to taxpayer and with whom he had business dealings and to some extent controlled. The impracticality is that you didn't know what might turn up in the criminal investigation which could affect the auditing of these returns. For certain, and moreover, you also don't want to get in the way of that. You don't want to be taking custody of documents that they need and you got them when they need them.  The referee says you did take custody of all the documents, not to mention that you mixed them up. You didn't handle a big problem. The record reflects that the subpoena that was served on the taxpayer's power of attorney in 2011 was part of the criminal investigation. It wasn't the revenue agent going around law enforcement. The revenue agent suspended her investigation in September of 2009 and did not reopen it until December of 2014. So all of the documents that were taken from taxpayers, adjacent businesses, and his premises were done by law enforcement and not by the IRS. The IRS didn't take action. And the taxpayer disingenuously suggests that he was not on notice that the IRS was reserving action on this. In fact, he repeatedly called them and he actually seeks now to have this court hold that those contacts, plus this form that the statute has categorically excluded from refund claim status, should collectively be read as an informal claim for refund that should toll his statute of limitations. That can't be harmonized with the argument that he lacked notice that the IRS was taking no action. He was well aware because he was told every time he contacted the IRS that they were not going to move on this until the criminal investigation was done, they were holding it. What was going on in the exam would not be released until the results of the criminal investigation. Now, the US attorney decided not to prosecute in August of 2014, and in December when the IRS learned, they reopened his file. And that's when he received the notice that he now contests. As a practical matter, this 6411 90 day period had no effect on, or the IRS is in action all the way through 2014, had no effect on his ability to file a proper refund claim within the three year statute of limitations. Anytime from October 2010 to October 2013, he could have filed a Form 1040X for 2004. This is his individual income taxes. His personal dealings, the documents that are supporting his claims of individual income and expenses on his individual tax return were not under investigation. It was his businesses, or the businesses that he was involved in, which were under investigation. He retained the ability to file a 2004 Form 1040X up to and including October 15th, 2013. He did not do so, and nothing the IRS did prevented him from doing so. So he should not be heard to argue that it was in any way prejudicial to him that the Form 1045 was not treated as a refund claim, or that he did not learn of the disposition of his 2004 refund claim until 2014. Turning to the second tax year, 2005, that is a year that was timely filed, and did it at the same time as the Form 1045. So clearly he was able and had the capacity to file a Form 1040X. And as Judge Jacobs has noted, he has the ability to file a subsequent amended 1040X if the first one was incorrect. He knew how to do these things. He had professionals working for him. In 2005, where he did do it correctly, he claimed a carry back of a significant amount, over a million dollars, seeking a refund ultimately of about a half million dollars. Which was denied because the service then reopened his 2005 return, not for the purposes of collections, because those are time barred, but for the purpose of computing his overpayment, precisely. And it realized, in so doing, that there was no overpayment. That he had, in fact, under-reported his taxes by somewhere in the neighborhood of $4.5 million. And this is not an evidentiary question. It's declared on his return, and to the best of the court's knowledge, he was putatively entitled to claim this expense due to an agreement that he had with this entity, that he had no ownership interest in, possibly had some modicum of control over, that entitled him to claim some of their expenses on his personal tax return. And that's also setting aside how one incurs a $4.5 million cost of goods sold expense in a mortgage brokerage. But that's not before the court. What is before the court is, can he substantiate this deduction on his individual income tax return? The district court correctly held that he could not. There is no evidentiary question that maybe some additional evidence would explain that better. He had the opportunity to present such evidence on summary judgment and did not do so. The district court correctly held that having failed to substantiate this expense, he then was left with a deficiency on his 2005 tax return. What that meant was that no matter what carryback he was, because there was some dispute as to the computation of the carryback loss from 2007, no matter how much money, even if we gave the maximum proposed computation for the carryback, it would be completely swallowed up by the underpayment, this underreporting of income. Which you can't collect, but which you can use to offset. Correct. So no one is suggesting that the IRS can now go back and levy on him. Yes. Because the assessment of a debt for this period is time barred. But because his Form 1040X was timely filed, and because his refund suit was timely filed, recomputation of that period is not foreclosed. That's what the district court did. And in so doing, the district court said, if you have a $1.4 million carryback, that's, if you have a $1.2 million, if you have a $1 million, no matter how we compute the value of your carryback loss, it's going to be less than $4.5 million. Therefore, you have no overpayment. Therefore, there is no refund to pay out to you. And granted summary judgment in favor of the government on those grounds. And nothing the taxpayer has presented today undermines that decision, which we submit as correct. And if the court has no other questions, we would rest on our brief and ask that you affirm the district court. Thank you. Thank you both. We will reserve decision. The case of United States versus McFarland is taken on submission. The case of Chun versus Amtrak is taken on submission. That's the last case on calendar. Please adjourn court. Thank you. Members standing for?